UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MAIA B., <br><br>              Plaintiff, <br>     v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>              Defendant. | CASE NO. 2:24-cv-01769-GJL <br><br> SOCIAL SECURITY DISABILITY APPEAL ORDER |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule ("MJR") 13. *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 2. Plaintiff submitted an opening brief on February 27, 2025, and the Commissioner filed a responsive brief on April 18, 2025. Dkt. 12, 16.

After considering the Administrative Record ("AR") and all memoranda, the Court concludes the Administrative Law Judge ("ALJ") did not err in finding Plaintiff not disabled. The Court accordingly **AFFIRMS** the Commissioner's final decision in this matter.

//

SOCIAL SECURITY DISABILITY APPEAL ORDER - 1

## I. PROCEDURAL HISTORY

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) and Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act was denied initially and following reconsideration. AR 73–74, 92–93. Plaintiff's initial hearing was held on November 9, 2021. AR 15, 37. On December 2, 2021, the ALJ issued a written decision in which the ALJ concluded Plaintiff was not disabled pursuant to the Social Security Act. AR 12–36. Plaintiff filed a Complaint in this District seeking judicial review of the ALJ's decision on September 22, 2022, and the Court reversed and remanded Plaintiff's claim for further administrative proceedings under sentence four of 42 U.S.C. § 405(g) on July 27, 2023. AR 852–858.

Following remand, the ALJ held an additional hearing on May 21, 2024. AR 777, 801. On June 28, 2024, the ALJ issued a second decision finding Plaintiff was not disabled pursuant to the Social Security Act from the onset date to the date last insured ("DLI"). AR 1156–72. Plaintiff again appealed the ALJ's decision, filing a Complaint in this Court on October 23, 2024. Dkt. 6. The Commissioner filed the sealed AR on December 23, 2024. Dkt. 8.

## II. BACKGROUND

Plaintiff was born in 1988 and was 29 years old on April 7, 2020, the alleged date of disability onset. AR 791. Plaintiff has at least a high school education and has performed past relevant work as a bartender, sales clerk, dental assistant, security guard, waitress, jewelry sales representative, order clerk, and hand packager. AR 791. Plaintiff suffers from fibromyalgia, obesity, headaches, depressive disorder, and anxiety disorder. AR 780. The ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1

(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). AR 781. The ALJ found Plaintiff had the following Residual Functional Capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she should never climb ladders, ropes, or scaffolds. She can do all other postural activities frequently. She must avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery. She is capable of simple tasks. She can interact occasionally with the general public and coworkers. She can adapt to simple, occasional workplace changes. She should not engage in managerial work.

AR 789.

### III.   DISCUSSION

In Plaintiff's Opening Brief, Plaintiff argues the ALJ erred in failing to properly consider the medical opinions of J. David Cameron, M.D., and Nissa Freed, ARNP. Dkt. 12 at 4, 9. Plaintiff claims the ALJ failed to provide adequate explanation supported by substantial evidence in the record for finding these opinions unpersuasive. *Id.* at 2. Having reviewed the record and for the reasons set forth below, the Court finds the ALJ reasonably found Dr. Cameron's opinion and ARNP Freed's letter unpersuasive based on substantial evidence.

For applications filed on or after March 27, 2017, the Administration has directed ALJs to not defer to medical opinions from treating or examining sources. *See* 20 C.F.R. § 416.927(c). Instead, they must evaluate the persuasiveness of all medical opinions by analyzing their "supportability" and "consistency," as well as other appropriate factors. 20 C.F.R. § 416.920c(a). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)); *see also*, 20 C.F.R. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence

1  from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (citing 20 C.F.R. §
2  404.1520c(c)(2)); *see also*, 20 C.F.R. § 416.920c(c)(2).

3      The Ninth Circuit recently held that the "revised social security regulations are clearly
4  irreconcilable with [its] caselaw according special deference to the opinions of treating and
5  examining physicians on account of their relationship with the claimant." *Woods v. Kijakazi*, 32
6  F.4th 785, 792 (9th Cir. 2022). Therefore, for applications filed after March 27, 2017, "an ALJ's
7  decision, including the decision to discredit any medical opinion, must simply be supported by
8  substantial evidence." *Id.* at 787.

9      The ALJ is responsible for evaluating a claimant's testimony and resolving ambiguities
10 and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)
11 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Determining whether
12 inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and
13 whether certain factors are relevant to discount" the opinions of medical experts "falls within this
14 responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999)). It is
15 not the job of the Court to reweigh the evidence: If the evidence "is susceptible to more than one
16 rational interpretation," including one that supports the decision of the Commissioner, the
17 Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.
18 2002) (citing *Morgan,* 169 F.3d at 599, 601).

19 **A.     Opinion of J. David Cameron, M.D.**

20     On February 3, 2021, Dr. Cameron examined Plaintiff and wrote a narrative report
21 describing her physical symptoms and limitations. AR 594–603. Based on the Plaintiff's
22 fibromyalgia symptoms, Dr. Cameron opined Plaintiff's functional capacity was limited to lifting
23 15 pounds occasionally and 10 pounds frequently, to standing or walking in thirty-minute
24

increments for a total of three hours per day, and to sitting in thirty-minute increments for a total of 3-4 hours per day. AR 602. Dr. Cameron also limited Plaintiff to performing postural activities on a less than frequent (but more than occasional) basis and stated Plaintiff can perform only frequent reaching and manipulative activities. AR 602–03. Dr. Cameron cited Plaintiff's dizziness as a reason for limiting her exposure to unprotected heights. AR 603.

The ALJ found Dr. Cameron's limitations unpersuasive for the following reasons:

> This opinion is not supported by Dr. Cameron's own exam findings that were largely within normal limits and showed the claimant to be able to move around without difficulty, to have a normal gait, and to have intact range of motion and strength. This opinion is further inconsistent with the largely normal physical observations in the record and the claimant's own reported improvement to include the more recent records showing that she reported an ability to work more than full time at her parent's bar, which she helped to open.

AR 789.

Plaintiff argues the ALJ impermissibly excluded Dr. Cameron's opinion based upon normal clinical findings when fibromyalgia is not inconsistent with normal clinical findings.[1] Dkt. 12 at 6 (citing *Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017)(cautioning against relying upon normal physical examination findings to discount medical opinions and claimant testimony concerning fibromyalgia, and noting that findings of normal muscle strength, tone, and stability, as well as a normal range of motion, are "perfectly consistent" with debilitating fibromyalgia, a condition diagnosed "entirely on the basis of patients' reports of pain and other symptoms")(internal citations omitted))." While the Court agrees dismissing Dr. Cameron's

---

[1] While acknowledging the ALJ's initial decision was vacated by the Court, Plaintiff nevertheless notes the ALJ previously considered Dr. Cameron's opinion persuasive and suggests this supports a finding of error here. Dkt. 12 at 5 (citing AR 27). However, the Court previously remanded this case to allow the ALJ the opportunity to reconsider Dr. Cameron's opinion, and it appears the ALJ did so. Accordingly, the Court declines to consider the ALJ's previous decision further and will limit its consideration to the reasoning set forth by the ALJ in the more recent decision.

SOCIAL SECURITY DISABILITY APPEAL ORDER - 5

opinion based solely upon normal physical examination findings would be error, Plaintiff's framing of this issue does not take the ALJ's conclusion fully into account.

The ALJ addressed the medical opinions in this case only after providing a detailed summary of Plaintiff's medical history and analyzing Plaintiff's reported symptoms for each of her impairments alongside the other evidence in the record. *See Kaufmann v. Kijasaki*, 32 F.4th 843, 851 (9th Cir. 2022)(concluding a reviewing court should look to all the pages of the ALJ's decision to discern the ALJ's full explanation for the ALJ's decision). In doing so, the ALJ pointed to various inconsistencies with Plaintiff's reported constant and debilitating pain.

Specifically, the ALJ noted Plaintiff had not seen a rheumatologist for a fibromyalgia diagnosis prior to March 2021,[2] Plaintiff reported mild stretching and sufficient sleep helped address her pain, Plaintiff indicated she had not taken any pain medication while out of the country from 2018 to 2019, and Plaintiff canceled her recommended 12 weeks of physical therapy in June 2021. AR 784–85. In late 2022, Plaintiff reported she was doing well and feeling better than she maybe ever had. AR 787. Despite indicating she has constant and daily pain, the ALJ's review of Plaintiff's treatment notes indicated she often appeared in no acute or apparent distress during her medical appointments. AR 785. The ALJ found the general "lack of observations of acute or apparent distress [to be] inconsistent with the [Plaintiff]'s allegations of extremely limiting pain and symptoms." *Id.*

Thereafter, the ALJ found the Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were "inconsistent with the longitudinal evidence." AR 787. In

---

[2] The ALJ also noted Plaintiff provided only the first and last pages of the rheumatologist's report, which do not provide any reference to the rheumatologist diagnosing Plaintiff with fibromyalgia. A "rheumatologist's specialized knowledge is 'particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community.'" *Revels*, 874 F.3d at 664 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004)).

SOCIAL SECURITY DISABILITY APPEAL ORDER - 6

particular, the ALJ found Plaintiff made the following statements that were not entirely consistent with her allegedly incapacitating pain: she described her sleep only "a little" disturbed because of fibromyalgia pain, she indicated her pain was better during her year spent away from the United States despite little treatment, she told providers on several occasions she walks quite a lot despite alleging "she cannot walk far and experiences constant pain," she told providers in March 2021 that she was going to the gym more regularly, and she reported that she has a driver's license and continues to drive, a complex task that requires multitasking while dealing with external and internal stimuli. AR 787–88.

Despite testifying that her only work since 2017 had been painting a mural for her father's business, Plaintiff subsequently reported working as a personal assistant, starting a second job, working on her art, working for "random people doing random things," and working so much she had not had enough time to work on her book. AR 788. Plaintiff further reported she had been working for her father until November 2020, which included running errands, helping run the business, painting walls and a mural despite her fibromyalgia pain. *Id.* Near the end of 2020, Plaintiff indicated she worked as an apprentice in a frame shop, which she continued into the following year. *Id.* The ALJ identified these inconsistencies in Plaintiff's reported statements throughout the record rather than relying exclusively upon the normal clinical findings.

To the extent Plaintiff argues the ALJ impermissibly substituted his opinion for that of Dr. Cameron's, the Court disagrees. The ALJ found numerous inconsistencies in the record, and the ALJ is solely responsible for evaluating a claimant's testimony and resolving ambiguities and conflicts in the medical evidence. *Reddick* 157 F.3d at 722 (*citing Andrews*, 53 F.3d at 1039). The ALJ detailed the inconsistencies relative to Plaintiff's fibromyalgia at length and concluded they were sufficient to discount Dr. Cameron's opinion. It is not the job of the Court to reweigh

the evidence, but rather to uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.

Nor is the Court persuaded by Plaintiff's argument that the "ALJ erred in relying upon evidence regarding the Plaintiff's work activity in 2023, almost two years after Dr. Cameron provided his opinion, to claim inconsistency, and to discredit Dr. Cameron's opinion wholesale" rather than considering Dr. Cameron's opinion relative to the time prior to her return to work. Dkt. 12 at 8–9. The ALJ's rationale for rejecting Dr. Cameron's opinion was not based solely upon Plaintiff's return to work in 2023. This was just one of Plaintiff's "own reported improvements" that factored into the ALJ's conclusion.

As noted above, the Plaintiff reported the following to her providers: on April 12, 2018, Plaintiff reported her sleep only "a little disturbed because of [her] fibromyalgia pain" and "overall doing better," AR 478, 483; Plaintiff reported she felt pretty good and her pain was much better while taking no pain medication during her time in the Republic of Georgia from 2018 to 2019, AR 701, 739; on June 3, 2021, she indicated mild stretching helped with her pain, AR 689, 721; on October, 28, 2022, she reported that she felt less physically limited than before and stated she was "feeling better than I maybe ever have," AR 1140. Given that the ALJ's decision considered the above listed instances of Plaintiff's reported improvement in addition to the more recent records showing that she reported an ability to work more than full time hours during the week, the ALJ reasonably determined Dr. Cameron's opinion was not persuasive as to the entirety of the relevant period. AR 789.

In sum, the ALJ's decision thoroughly accounted for findings that both supported and did not support Plaintiff's reported fibromyalgia symptoms, and ultimately determined that Dr. Cameron's opinion was inconsistent with the record. The ALJ relied on much more than normal

SOCIAL SECURITY DISABILITY APPEAL ORDER - 8

clinical findings in doing so. Given the numerous inconsistencies referenced by the ALJ throughout the decision, the Court finds substantial evidence supported the ALJ's conclusion.

**B.      Opinion of Nissa Freed, ARNP**

Plaintiff further objects to the ALJ's consideration of ARNP Freed's letter supporting Plaintiff's entitlement to an Emotional Service Animal ("ESA") dated October 28, 2021 ("ESA Letter"). Dkt. 12 at 9. In a letter addressed "To Whom it May Concern," ARNP Freed ARNP wrote the following:

> Despite being actively engaged in psychiatric treatment, [Plaintiff] continues to experience depression and anxiety, leading to unnecessary emotional suffering and disability. For this reason I believe she would benefit from the presence of an Emotional Support Animal to help manage her symptoms.

AR 719. The ESA Letter goes on to address Plaintiff's entitlement to an ESA relative to the Fair Housing Amendments Act and the Air Carrier Access Act criteria. *Id.*

The ALJ considered the ESA Letter but found it unpersuasive for two reasons. First, the ALJ found this ESA conclusion "neither inherently valuable or persuasive" for determining disability for Social Security benefits as two administrative criteria and processes diverge considerably. AR 790. Second, the ALJ concluded the degree of impairment described in the ESA Letter was not supported by the treatment notes documenting significant improvement with counseling and medication, the largely normal mental status evaluations in the record, and Plaintiff's substantial work activity. *Id.*

At the outset, the Court questions whether the ESA Letter qualifies as a medical opinion. A "medical opinion" is a statement from a medical source about what a claimant's ostensible capabilities despite her impairments and whether the claimant has one or more impairment-related limitations or restrictions in her ability to: (1) perform physical demands of work activities; (2) perform mental demands of work activities; (3) perform other demands of work,

SOCIAL SECURITY DISABILITY APPEAL ORDER - 9

1  such as seeing, hearing, or using other senses; and (4) adapt to environmental conditions. 20
2  C.F.R. § 416.913(a)(2). The ESA Letter here does not opine as to Plaintiff's abilities in these
3  areas. It does not explain how an ESA would help mitigate Plaintiff's mental health issues, what
4  particular symptoms an ESA would address, or what Plaintiff is capable of doing either with or
5  without an ESA. *W.D. v. Dudek*, 2025 WL 947533, *5 (D. Colo. March 28, 2025)(finding ESA
6  letter did not qualify as a medical opinion when its "vague and wholly unparticularized
7  statements" did not address Plaintiff's abilities despite his impairments); *Angela H. v.*
8  *Commissioner of Social Security*, 2024 WL 1259875, at *4 (S.D. Ohio Jan. 30, 2024),
9  *recommendation adopted*, 2024 WL 1257213 (S.D. Ohio Mar. 25, 2024)(finding ESA letter "is
10 not a medical opinion because it does not discuss what Plaintiff can do despite her symptoms or
11 diagnoses in a *work setting* as the regulations require")(emphasis in original).

12        The Court notes ARNP Freed's reference to Plaintiff's "disability" in the ESA Letter is
13 "neither valuable nor persuasive" as the determination of disability is a legal determination
14 reserved for the Commissioner, not the medical provider. *See* 20 C.F.R. § 404.1520b(c)(3)
15 (categorizing statements of disability reserved to the Commissioner as "inherently neither
16 valuable nor persuasive" evidence). While alluding to Plaintiff's ongoing mental health issues,
17 the ESA Letter offers no insight into Plaintiff's functional capabilities in a work environment and
18 so it offers little value for the purposes of determining Plaintiff's RFC.

19        Regardless, the ALJ reasonably found the ESA Letter unpersuasive for the reasons
20 proffered in the ALJ's decision. Entitlement to an emotional support animal is different than
21 determining disability for Social Security benefits, and the ESA Letter was inconsistent with the
22 ALJ's determination that Plaintiff's anxiety and depression were less limiting than alleged. As
23 with Plaintiff's fibromyalgia symptoms, the ALJ thoroughly summarized Plaintiff's mental
24

SOCIAL SECURITY DISABILITY APPEAL ORDER - 10

health record prior to considering the medical opinions in this case and found Plaintiff's reported symptoms were inconsistent with the longitudinal evidence. AR 785–89. In particular, the ALJ found Plaintiff's mental status findings were largely within normal limits, Plaintiff's symptoms were responsive to mental health treatment, and she reported improvement at various times throughout the relevant time period. AR 786.

Therefore, the Court finds no error in the ALJ's finding the ESA Letter unpersuasive as inconsistent with Plaintiff's mental health record.

## IV.  CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 14th day of July, 2025.

Grady J. Leupold
United States Magistrate Judge